**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OMAR HAZIM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-1286 |
| | § | |
| SCHIEL & DENVER PUBLISHING LTD., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Omar Hazim, who lived in the United States, entered into a written contract with Schiel & Denver Publishing Ltd. ("S&D Ltd."), a United Kingdom company, to self-publish his book, "Islam in the Heartland of America." The contract required S&D Ltd. to create physical copies of the book; send Hazim any copies that he ordered, at a discount; send bookstores and other entities or individuals any copies that they ordered; and to pay Hazim royalties on any sales. Hazim complained to S&D Ltd. that he received only one copy out of the 250 he ordered to use in a book tour. S&D Ltd. disputed this and responded that it had sent Hazim all 250 copies. The parties' relationship continued to deteriorate until December 2010, when S&D Ltd. invoked the provision authorizing either party to terminate the contract without cause. S&D Ltd. asserted that it did so when it learned that "Islam in the Heartland of America" contained "extreme Islamic terrorist and hate material." (Docket Entry No. 3, at 7, 9–10). Hazim disputes this characterization of his book.

Hazim sued S&D Ltd. and two affiliated entities, Schiel & Denver Book Publishers ("S&D Book Publishers") and Schiel & Denver Book Group ("S&D Book Group"), alleging that the defendants breached the publishing contract by: (1) not sending all the copies Hazim had ordered; (2) failing to promote the book; (3) failing to account for sales Hazim contends S&D Ltd. made and

1

pay the royalties; (4) terminating the contract; and (5) continuing to advertise and sell the book after the contract ended.  (Docket Entry No. 1).  S&D Ltd. answered, moving to dismiss for lack of personal jurisdiction and asserting that S&D Book Publishers and S&D Book Group are not legal entities that can be sued.  (Docket Entry No. 3, at 1–4).

In July 2013, Hazim moved for entry of default as to all defendants.  (Docket Entry No. 17).  The court granted the motion as to S&D Book Group but denied the motion as to S&D Ltd. and S&D Book Publishers because Hazim had failed to show proper service of process on those defendants.  (Docket Entry No. 19).

In April 2014, Hazim moved for default judgment as to the remaining defendants.  (Docket Entry No. 23).  The motion was denied because Hazim had not addressed the arguments raised in S&D Ltd.'s answer and motion to dismiss, and the record did not support the damages Hazim claimed or the attorney's fees he sought.  (Docket Entry No. 24).  In August 2014, Hazim filed a response to S&D Ltd.'s answer.  (Docket Entry No. 25).

Hazim has moved for summary judgment and entry of final judgment.  (Docket Entry Nos. 28, 30).  Neither S&D Ltd. nor S&D Book Publishers has responded to these motions.

Based on the pleadings, the record, the motions, Hazim's response, and the applicable law, the court grants S&D Ltd.'s motion to dismiss for lack of personal jurisdiction, denies Hazim's motion for summary judgment, and denies Hazim's motion for entry of final judgment.  No later than August 7, 2015, Hazim must show cause why his claims against S&D Book Publishers should not be dismissed.

The reasons for these rulings are set out below.

## I.    Background

Hazim is a Kansas resident and was living in Kansas when he communicated with Schiel &

2

Denver about self-publishing "Islam in the Heartland of America." (Docket Entry No. 1 at 1). S&D Ltd. is a publication-on-demand company based in the United Kingdom. (Docket Entry No. 3 at 14). S&D Ltd. claims that S&D Book Publishers is not a legal entity subject to suit and that to the extent it has a physical location, it is only in Bangalore, India. (*Id.* at 3–4). S&D Ltd. also claims that S&D Book Group is not a legal entity. (*Id.* at 4).

Hazim and S&D Ltd. signed an Author Agreement on August 13, 2010. (Docket Entry No. 25, Ex. C). Under the Agreement, Hazim retained all rights to "Islam in the Heartland of America." S&D Ltd. agreed to provide "limited publishing services," specifically, "production, printing[,] and distribution." (*Id.* at 1). The Author Agreement required S&D Ltd. to pay Hazim royalties on any books sold and to account for those sales each quarter. (*Id.* at 2–3, 7). The Agreement also required Hazim to ensure that the book contained no "improper material." (*Id.* at 4). Section 18 allowed either party to terminate the Agreement without cause by giving the other party 30 days' advance notice in writing.

The Agreement contained the following choice-of-law and forum-selection clause:

> This Agreement shall be deemed to be a contract made in the State of Texas and shall be construed and applied in all respects in accordance with the laws of the State of Texas and the parties hereto submit and agree to the jurisdiction of the State of Texas courts.

(*Id.* at 9).

On November 2, 2010, Hazim ordered 250 copies of his book from S&D Ltd. for a book tour. (Docket Entry No. 1 at 4). Hazim claims that he only received one of those books. (*Id.*). S&D Ltd. claims that all 250 books were shipped and delivered to Hazim at his Kansas address. Hazim contacted his credit-card company and canceled payment on the 249 books he claimed he did not receive. (*Id.*).

On December 8, 2010, S&D Ltd. invoked Section 18 and canceled the Agreement, to be

3

effective 30 days later.  Although Section 18 did not require cause to terminate, S&D Ltd. stated that it did so because "Islam in the Heartland of America" contained "extreme Islamic terrorist and hate material," violating the Agreement.  (*Id.*; Docket Entry No. 3 at 7, 9–10; Docket Entry No. 28, Ex. E at 2).  Hazim claims that after the Agreement ended, S&D Ltd. continued to "print, publish, and sell" his book without authorization and without providing an accounting of sales and royalties. (Docket Entry No. 1 at 5).  Hazim filed this suit, alleging breach of contract, copyright infringement, violation of the Trademark Act, unfair competition, violation of the Texas Deceptive Trade Practices Act, unjust enrichment, and tortious interference with a contract.  (Docket Entry No. 1).

In response to the suit, S&D Ltd. argued that it was not properly sued and that it could not be subjected to the jurisdiction of this Texas court.  S&D Ltd. also argued that the book's content violated the Author Agreement because it promoted an "agenda of Islamic fanaticism."  (Docket Entry No. 3 at 7).  S&D Ltd. censored the book and terminated the Agreement after discovering this fact and consulting with its lawyers.  (*Id.* at 9).  S&D Ltd. claimed that it fulfilled all its duties under the Author Agreement by delivering the 250 books Hazim had ordered to his Kansas address on December 7, 2010.  (*Id.* at 10).  S&D Ltd. claimed that after terminating the Agreement, it did not publish Hazim's book or offer it on any website.  (*Id.* at 8).  S&D Ltd. also claimed that in December 2011, it sent Hazim a full accounting showing that it had made "virtually no sales" before that date and stated that it has not sold any books since then.  (*Id.* at 10–11).  Hazim made arrangements with another publication-on-demand company after S&D Ltd. terminated the Agreement.  Hazim has sold and distributed copies of his book through the other company.

## II.    S&D Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction

### A.    The Applicable Legal Standard

When a nonresident defendant challenges personal jurisdiction under Rule 12(b)(2), the

plaintiff has the burden to demonstrate facts supporting jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs.*, *Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co.*, *LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)). But the court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001).

**B.      The Forum-Selection Clause as a Basis for Jurisdiction over S&D Ltd.**

Hazim argues that S&D Ltd. consented to this court's jurisdiction because the Agreement's forum-selection clause stated that the parties submitted "to the jurisdiction of the State of Texas courts." (Docket Entry No. 25, Ex. C at 9).

Section 21 of the Author Agreement stated:

> This Agreement shall be deemed to be a contract made in the State of Texas and shall be construed and applied in all respects in accordance with the laws of the State of Texas and *the parties hereto submit and agree to the jurisdiction of the State of Texas courts*.

(Docket Entry No. 25, Ex. C at 9) (emphasis added). Unlike a choice-of-law provision, which is simply "a factor in the minimum contacts analysis," this type of forum-selection clause can "give a court jurisdiction over a nonresident defendant." *Goodman Co. v. A & H Supply, Inc.*, 396 F. Supp. 2d 766, 773 (S.D. Tex. 2005). A forum-selection clause is "*prima facie* valid and enforceable

5

unless the opposing party shows that enforcement would be unreasonable." *Id.* at 773–74 (quoting *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13,15 (5th Cir. 1995)). "A forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts, absent a showing of fraud or overreaching in creating the clause, enforce such consent." *Id.* at 774.

The forum-selection clause in the Author Agreement is valid and enforceable. Although S&D Ltd. argues that litigating in Texas is inconvenient and expensive, it has not made a compelling case that applying the clause—which S&D Ltd. drafted—would be unfair. (*See* Docket Entry No. 25, Ex. C); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991); *Goodman*, 396 F. Supp. 2d at 774. The issue is whether the forum-selection clause in the Author Agreement shows S&D Ltd.'s consent to personal jurisdiction in this federal district court, or only in the Texas state courts.

The Fifth Circuit distinguishes between forum-selection clauses that consent to jurisdiction in any court in a given city, county, state, or nation, and those that consent to jurisdiction only in a specific court or type of court in that location. *See Collin Cty. v. Siemens Bus. Servs., Inc.*, 250 F. App'x 45 (5th Cir. 2007); *Alliance Consulting Grp. LLC v. SMICO Mfg. Co., Inc.*, No. 1:13CV274-HSO-RHW, 2013 WL 5949552, at *2 (S.D. Miss. Nov. 6, 2013). A clause consenting to jurisdiction by courts "in" a state is broader than a clause consenting to jurisdiction by courts "of" a state. In *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397 (5th Cir. 2008), the Fifth Circuit held that a clause stating that "venue shall occur *in* Harrison County" and containing "no reference to courts *of* that county," allowed the defendant to be sued in either the state or federal courts located in Harrison County. *Id.* at 399–402. In *Dixon v. TSE Int'l Inc.*, 330 F.3d 396 (5th Cir. 2003), the Fifth Circuit held that a forum-selection clause stating that "[t]he Courts *of* Texas, U.S.A., shall have jurisdiction over all controversies" consented only to jurisdiction by the state courts, making removal to a federal court in Texas improper. *Dixon*, 330 F.3d at 397 (emphasis added).

6

"[T]he federal courts of the Eastern District of Texas are not courts *of* Texas because they do not

belong to Texas, but rather are courts *of* the United States." *Id.* at 398.

The clause in the Author Agreement states that the parties consent to submit to the

jurisdiction of the "State of Texas courts." (*Id.*). Under the Fifth Circuit's approach to forum-

selection clauses, a federal district court in Texas is not a "State of Texas Court." *See, e.g.*, *id.* The

federal district courts in the Southern District of Texas are federal courts, not "State of Texas

courts." *See Mfg. & Mktg. Concepts, Inc. v. S. Cal. Carbide*, 920 F. Supp. 116, 119 (N.D. Ill. 1996)

(finding that "an Illinois court" plainly means an Illinois state court, not a federal district court in

Illinois). The parties did not consent to submit to the jurisdiction of this court.

The Fifth Circuit distinguishes between mandatory and permissive forum-selection clauses.

*See City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504–05 (5th Cir. 2004). A

forum-selection clause is mandatory if it "contains clear language showing that jurisdiction is

appropriate only in a designated forum." *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D.

Tex. 2003). "By contrast, permissive forum selection clauses authorize jurisdiction in a designated

forum, but do not prohibit litigation elsewhere." *Id.* "The wording of the forum-selection clause

is crucial in determining if it is mandatory or permissive." *Gary E. Patterson, P.C. v. Feldman*, No.

H-05-3609, 2005 WL 3307527, at *4 (S.D. Tex. Dec. 6, 2005). To be mandatory, the language of

the clause "must clearly demonstrate the parties' intent to make [the forum] exclusive." *Id.* (quoting

*City of New Orleans*, 376 F.3d at 504). "Where the agreement contains clear language showing that

jurisdiction is appropriate only in a designated forum, the clause is mandatory." *Id.* (quoting *Von

Graffenreid*, 246 F. Supp. 2d at 560).

The Agreement's forum-selection clause is permissive. It permits, but does not require,

jurisdiction in the Texas state courts. While the clause does not prohibit suit in a Texas federal

7

court, the nonresident contracting party cannot be compelled to litigate here unless there is another basis for establishing personal jurisdiction over that party.  The issue is whether S&D Ltd. is subject to specific personal jurisdiction in Texas based on its suit-related contacts, or to general personal jurisdiction based on the location of its its principal place of business or its continuous and systematic contacts with Texas.

Choice-of-law provisions and forum-selection clauses are relevant to this minimum-contacts analysis, but they are not dispositive.  *See Pervasive Software v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012); *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 395 (S.D. Tex. 2011) (citing *Rimkus Consulting Grp. v. Cammarata*, No. H-07-0405, 2007 WL 1520993, at *7 (S.D. Tex. May 22, 2007)).  S&D Ltd. must satisfy the standard minimum-contacts analysis.  *See BlueTarp Financial, Inc. v. Matrix Constr. Co.*, 845 F. Supp. 2d 342 (D. Me. 2012), *rev'd* 709 F.3d 72, 82–83 (1st Cir. 2013) (the district court and the First Circuit, after finding that the parties' permissive forum-selection clause conferred jurisdiction only on the state courts, continued to analyze whether the record showed the minimum contacts for specific personal jurisdiction; the courts considered as part of the suit-related contacts the choice-of-law and forum-selection clauses in the parties' contract).

### C.    Minimum Contacts as the Basis for Jurisdiction over S&D Ltd.

A federal court may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising jurisdiction is consistent with due process.  *See Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004); *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).  Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir.

2008).

Federal due process permits personal jurisdiction over a nonresident defendant with "minimum contacts" with the forum state, if exercising jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Id.* "Minimum contacts" can "give rise to 'specific' personal jurisdiction" or "to 'general' personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002). "[C]ontinuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." *Daimler*, 134 S. Ct. at 761 (emphasis omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853–54.

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* at 2851 (citation omitted). A court asks "whether there was 'some act by which

the defendant purposefully availed [himself] of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Id.* at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotations marks omitted).  Though the defendant's contacts with the forum must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person," even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498–99 (5th Cir. 2012) (internal quotation marks omitted).

Once a plaintiff has established minimum contacts, the burden shifts to the nonresident defendant to show that asserting jurisdiction would offend traditional notions of fair play and substantial justice. *Walk Haydel*, 517 F.3d at 245.  "[I]t is incumbent on the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).  "In conducting the fairness inquiry, [courts] examine (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

Even considering as part of S&D Ltd.'s contacts with Texas the facts that it signed a contract with a Texas choice-of-law provision and consented to submit to the jurisdiction of the Texas state

10

courts, the record does not show minimum contacts establishing either general or specific personal jurisdiction over S&D Ltd.

There is no specific personal jurisdiction over S&D Ltd. There are no allegations of suit-related contact between S&D Ltd. and Texas, other than the forum-selection clause and the choice-of-law provision contained in the parties' agreement. Hazim does not allege that the Author Agreement was performed or breached in Texas. The actions giving rise to Hazim's claims are alleged to have occurred in Kansas and the United Kingdom, not in Texas.

Nor does the record show general personal jurisdiction in Texas over S&D Ltd. Hazim argues that S&D Ltd.'s principal place of business is in Houston, Texas. (Docket Entry No. 1 at 1). S&D Ltd. claims that its principal place of business is in the United Kingdom and that its only American connection is an "international long distance mail forwarding address." (Docket Entry No. 3 at 2). Hazim points to S&D Ltd.'s website, which represents that the company has a "sister division based in Houston, Texas offering state-of-the-art publishing facilities across the United States" to serve S&D Ltd.'s British customers. (Docket Entry No. 25 at 1; *see also* Docket Entry No. 28, Ex. H at 1). Resolving this dispute in Hazim's favor, and considering the other facts he cites to support jurisdiction, do not show general personal jurisdiction under *Daimler*.

Viewing the disputed facts in Hazim's favor, S&D Ltd.'s contacts with Texas are limited to a "sister division" and an address in Houston, the website, sales in the United States, and the choice-of-law and forum-selection clauses in the Author Agreement. The website neither shows that, as Hazim claims, S&D Ltd. has its "principal place of business" in Texas, nor that S&D Ltd. is "at home" in Texas. *See Revell v. Lidov*, 317 F.3d 467, 471–72, 76 (5th Cir. 2002) ("Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts . . . with Texas are not in any way 'substantial.'"). A sister division with a Texas address

11

and the forum-selection clause do not make S&D Ltd. "essentially at home" in Texas, as necessary

for general personal jurisdiction over S&D Ltd.  *See Daimler*, 134 S. Ct. at 761.

Hazim has not met his burden of showing that this court has personal jurisdiction over S&D

Ltd.  The claims against S&D Ltd. are dismissed for lack of jurisdiction.

## III.    Hazim's Motions for Summary Judgment and for Entry of Final Judgment

Hazim moves for summary judgment and entry of final judgment against S&D Ltd.  (Docket

Entry Nos. 28, 30).  This defendant has been dismissed for lack of personal jurisdiction.  Hazim's

motions for summary judgment and final judgment are denied.

Hazim has not moved for summary judgment or entry of final judgment against S&D Book

Publishers.  Both the motion for summary judgment and for entry of final judgment state: "Plaintiff

is Omar Hazim; defendant is Schiel & Denver Publishing Ltd. [or LTD.]"  (Docket Entry Nos. 28,

30).  Hazim does not mention S&D Book Publishers or any allegations, claims, or requests for relief

against it in either motion, much less submit any evidence relating to this defendant.  (Docket Entry

Nos. 28, Exs. A–K; Docket Entry No. 30).  In his complaint, Hazim asserted that S&D Book

Publishers was liable because it was an "inseparable alter ego[]" of S&D Ltd., and because all three

defendants "function as one corporation," making S&D Book Publishers jointly and severally liable

for S&D Ltd.'s actions.  (Docket Entry No. 1 at 2, 9).

On August 15, 2014, the court ordered Hazim to respond to the arguments S&D Ltd. asserted

in its answer, including the argument that S&D Book Publishers is not a legal entity.  (Docket Entry

No. 24 at 4).  Hazim filed a response addressing other arguments, but he did not address the legal

status of S&D Book Publishers other than to claim that it was an "entity defined on their website."

(Docket Entry No. 25 at 3).  Hazim has not addressed this issue in his other filings, and he has not

mentioned S&D Book Publishers in any filing since the court's August 2014 order.

No later than August 7, 2015, Hazim must file a response showing cause why his claims against S&D Book Publishers should not be dismissed for failure to prosecute and failure to comply with the court's August 2014 order.

## IV.    Conclusion

S&D Ltd.'s motion to dismiss for lack of personal jurisdiction, (Docket Entry No. 3), is granted.  Hazim's motion for summary judgment and motion for entry of final judgment, (Docket Entry Nos. 28, 30), are denied.  No later than August 7, 2015, Hazim must file a response showing why his claims against S&D Book Publishers should not be dismissed.

SIGNED on July 28, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge